UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
LINDA REVERE,

                Plaintiff,

     — against —

BLOOMINGDALE'S, INC.,

                Defendant.
--------------------------------------------------X

**MEMORANDUM and ORDER**

03 CV 5043 (SLT)(WDW)

**TOWNES, United States District Judge:**

Plaintiff Linda Revere ("Plaintiff" or "Revere") brings this action against

Bloomingdale's, Inc.  ("Bloomingdale's" or "Defendant") alleging age-based discrimination in

violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., and

unlawful retaliation in violation of the ADEA.   Plaintiff also alleges analogous state law

violations under the New York State Human Rights Law.  Defendant moves for summary

judgment pursuant to Fed. R. Civ. P. 56(c).  For the reasons set forth below, Defendant's motion

is granted.

BACKGROUND

Linda Revere began working part time for Bloomingdale's in the Garden City Store in

1979 and went full time in 1980. (Deposition of Linda Revere ("Revere Dep.") at 8.)   She

started as a Floor Superintendent and was promoted to Employment Manager in 1982.  (Revere

Dep. at 9.)  She held that position for approximately six months when she became Human

Resources ("H.R.") Manager.  (*Id.*)  In 1994, the H.R. Manager position was combined with

operations and

given the new title of Director of Administration. (Revere Dep. at 10.) While in that position, Richard Mast, the store's General Manager, placed Revere on formal warning and suggested that she go someplace else. (Revere Dep. at 11, 12, 18.) Mast was unhappy with the way in which Revere performed the operations component of her job. (Revere Dep. at 11-13.)

Plaintiff contacted Margaret Hofbeck, Senior Vice President of Human Resources and Lillian Kirkman, in executive placement, and was placed in an H.R. Representative position in New York City. (Revere Dep. at 17.) She started this new position in 1995. As an H.R. Representative, Plaintiff's responsibilities included interviewing, hiring, firing and handling Union grievances. (Revere Dep. at 25.) She later became Senior H.R. Representative and Labor Relations Coordinator. (Revere Dep. at 27.)

Around April or May of 2000, Plaintiff was approached by Lillian Kirkman, who recommended to plaintiff that she apply for a position as an H.R. Manager in the Roosevelt Field Store. (Revere Dep. at 28.) Kirkman believed that Plaintiff was a strong candidate because of her previous experience as an H.R. Manager and because she lived near the Roosevelt Field Store. (Lillian Kirkman Affidavit ("Kirkman Aff.") at ¶ 2.) It was her opinion that Revere had been an excellent H.R. Manager in Garden City, despite her subsequent failure as Director of Operations. (Kirkman Aff. at ¶ 5.) Kirkman was also aware that Revere was in jeopardy of having her job eliminated due to budget cuts. (Kirkman Aff. at ¶ 3.) Although Revere was hesitant to make the change, she eventually decided to interview for the position. (Revere Dep. at 29-30.) She interviewed with Richard Ranges ("Ranges"), the General Manager of the Roosevelt Field Store. (Revere Dep. at 30.) Although Ranges had concerns that Plaintiff was

too task-oriented, he decided to offer her the job.  (Deposition of Richard Ranges ("Ranges

Dep.") at 123, 131.)  Revere was 60 years old when Ranges offered her the job.

Revere started as H.R. Manager in the Roosevelt Field location in October 2000.

(Revere Dep. at 50.)  She replaced Elisa Leary who had been promoted to Regional Director of

H.R.  (Ranges Dep. at 105-106.)   Plaintiff  received a statistical review of her performance,

which she believed to be fair, on April 13, 2001.  (Revere Dep. at 63-64.)  Statistical reviews are

issued annually to executives and deal primarily with individual and corporate statistical

performance on a defined set of metrics.  (Ranges Dep. at 26, 41.)  Plaintiff's statistical review

indicated that her job performance was more than satisfactory.  (*See* Ex. 8.)

Plaintiff received her first Management Development Review ("MDR") in June 2001.

MDRs are issued annually to executives and consist of six areas that measure management skills.

(Deposition of Rosemary Spano ("Spano Dep.") at 29-30.)  The MDR provides for an

employee's self-evaluation as well as the evaluation of the supervisor generating the review.

(Ranges Dep. at 60; Deposition of John Markcogliese ("Markcogliese Dep.") at 26.)  Plaintiff's

self-evaluation score was a 21 while Ranges' score for Plaintiff was a 17.  (Revere Dep. at 79.)

Ranges felt that Plaintiff's performance in her first year was average.  (Ranges Dep. at 131.)

Following the June MDR, Ranges began to have more serious concerns regarding

Plaintiff's performance. (Ranges Dep. at 165.)  Despite ongoing discussions with her, Ranges did

not observe any progress on the items that had been discussed with Plaintiff in her June MDR.

(Ranges Dep. at 165-167.)  There were continuing problems with training and partnership with

the junior management team, lapses in confidentiality, open to hire and turnover issues, and

violations of store policy.  (*Id.*)  According to Defendant, the H.R. Manager's responsibilities

had expanded significantly in recent years. The position was no longer limited to traditional

H.R. functions; instead, H.R. Managers were supposed to serve as business partners to the store

managers and the other executives in the stores. (Affidavit of Richard Ranges ("Ranges Aff.") at

¶ 11.) Revere's co-workers thought that she was in "way over her head" in the new position.

(Affidavit of Kristin White ("White Aff.") at ¶ 2.)

Early in January of 2002, Ranges spoke with Rosemary Spano, Director of Human

Resources for stores, about placing Revere on formal warning. (Spano Dep. at 70, 74.) The

Plaintiff was placed on formal warning on January 7, 2002, when she was given another MDR,

with a score of 10, and an action plan. (Revere Dep. at 98; Ranges Dep. at 188, 199.) Ranges

had created the action plan and reviewed it with Spano. (Spano Dep. at 89-90.) He needed

Spano's approval before he could present the plan to Revere. (*Id*.) The action plan set out

specific tasks that Plaintiff needed to perform with due dates.

In mid-2002, Plaintiff applied for a transfer to the Huntington store in the same position,

H.R. Manager, that she held in Roosevelt Field. John Butler, then Senior Vice President of H.R.

for Bloomingdale's, Inc., and Spano both agreed that, although Huntington was a smaller store,

the position there would have required the same skills that Revere had demonstrably lacked at

Roosevelt Field. (Affidavit of John Butler ("Butler Aff.") at ¶ 7.) Butler and Spano agreed that

she was not a viable candidate for the H.R. Manager position in Huntington and that she should

not be considered for that position. (*Id*.)

Based on Ranges' conclusion that aspects of the action plan were not being met and that

her performance had not improved, Revere was placed on final warning in October 2002, which

subjected her to possible termination in sixty days. (Revere Dep. at 191; Ranges Dep. at 211,

213.)  While she was on formal warning, Revere contacted Spano regarding her interest in an open H.R. Representative position in New York City.   Spano did not consider Revere to be qualified for the position because the position had been upgraded and required similar skills which she thought Revere lacked based on her performance in Roosevelt Field.  (Rosemary Spano Affidavit ("Spano Aff.") at ¶3.)

Revere filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in November of 2002, alleging age discrimination.  (*See* Ex. 30.)  On December 10, 2002, Plaintiff was terminated from her employment at Bloomingdale's.  The decision to terminate Plaintiff was made by Butler, in consultation with Ranges and Spano, and based on Ranges' recommendation.  (Spano Dep. at 118.)  Ranges received notification of Revere's EEOC charge on December 20, 2002.  (*See* Ex. 30.)  Neither Ranges, Spano, nor Butler knew that Revere had filed a charge of discrimination with the EEOC until after Revere had been terminated.  (Ranges Aff. at ¶ 17; Spano Aff. at ¶ 4; Butler Aff. at ¶ 12.)

Revere claims that Defendant fired her because of her age.  However, Revere does not present any evidence of comments or actions taken by Ranges, Spano or Butler that reference her age.  The only age-related comments she cites were allegedly made by Mr. Holman, Defendant's President.  Plaintiff alleges that Mr. Holman made a series of age-based comments, between July 2000 and February 2001, to executive level employees.  She alleges that Mr. Holman said that "we need some 'fresh blood' in the company" and  "we need new and fresh ideas."   She also alleges that he said longer service employees were "complacent" and "not as motivated as new employees" and that longer service employees were not "keeping up with the times."  (Affidavit of Barbara Smaby ("Smaby Aff.") at ¶ 6.)

5

Plaintiff further alleges that Mr. Holman selectively utilized the MDR process in an effort to lower the performance ratings of older, long-term employees, and that Defendant had a company-wide practice of selectively utilizing the MDR process to effectuate a discriminatory agenda. She claims that two direct reports of Mr. Ranges, each of whom are at least 10 years younger than Plaintiff, did not receive their MDRs on an annual basis. (Affidavit of Linda Revere ("Revere Aff.") at ¶ 8.) Butler, Spano and Ranges allege that they have never heard any statement that Defendant wanted to eliminate older workers, or words to that effect, nor were they encouraged or directed to discharge any employee because of his or her age. (Ranges Aff. at ¶ 3; Spano Aff. at ¶ 2; Butler Aff. at ¶ 3.)

Plaintiff claims that Ranges' treatment of her is further evidence of Defendant's discriminatory animus. Plaintiff claims she was purposefully excluded from a brand strategy meeting in New York. Plaintiff admits that Ranges invited her to the event but posits that she was denied a ticket due to her age. Plaintiff was able to get into the meeting without a ticket. At the meeting, Plaintiff claims that Ranges "ignored" her even though he was in close proximity to her during meeting breaks. (Revere Aff. at ¶ 7.) She also claims she was not invited to a social gathering that was supposed to take place after the meeting. (*Id.*)

According to Defendant, Ranges invited his entire senior staff to the meeting but when he received the tickets, he noticed that he had not received enough to give to each senior executive. Because tickets were not required for entry to the meeting, he gave the tickets he had to his assistant to place in the executives' mailboxes. (Ranges Aff. at ¶ 9.) Defendant alleges that Plaintiff was not the only senior executive who did not receive a ticket. Kristin White, then age 37, also did not receive a ticket, but she too attended the meeting. (White Aff. at ¶ 5.)

6

According to Defendant, Kristin White sat next to Plaintiff at the meeting.  (*Id.*)  Plaintiff

alleges, however, that she sat with individuals whom she had not previously known or met.

(Revere Aff. at ¶7.)


DISCUSSION

*A.  Standard for Summary Judgment*

Summary judgment is generally appropriate where the "pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law."  *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (quoting

Fed. R. Civ. P. 56(c)).  The relevant governing law in each case determines which facts are

material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc*.,

477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  No genuinely triable factual issue

exists when the moving party demonstrates, on the basis of the pleadings and submitted

evidence, and after drawing all inferences and resolving all ambiguities in favor of the

non-movant, that no rational jury could find in the non-movant's favor.  *See Chertkova v. Conn.

Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or

other documentation, the non-movant must offer similar materials setting forth specific facts that

show that there is a genuine issue of material fact to be tried.  *Rule v. Brine, Inc.*, 85 F.3d 1002,

1011 (2d Cir. 1996).  The non-movant must present more than a "scintilla of evidence," *Del. &*

*Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477

U.S. at 252), or "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), and

cannot rely on the allegations in his or her pleadings, conclusory statements, or on mere

assertions that affidavits supporting the motion are not credible.  *See Gottlieb v. County of*

*Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

Summary judgment is appropriate in discrimination cases.  *See Weinstock v. Columbia*

*Univ.*, 224 F.3d 33, 41 (2d Cir. 2000);  *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).  The

Supreme Court has reiterated that trial courts "should not 'treat discrimination differently from

other ultimate questions of fact.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509

U.S. 502, 524 (1993)).

*B.  Claims Under the ADEA*

The ADEA makes it unlawful "for an employer to... discriminate against any individual

with respect to [her] compensation, terms, conditions, or privileges of employment, because of

such individual's age."  29 U.S.C. § 623(a)(1).  Claims under the ADEA are analyzed under the

same burden shifting framework as claims brought pursuant to Title VII.  *See Schnabel v.*

*Abramson,* 232 F.3d 83, 87 (2d Cir. 2000); *see also Slattery v. Swiss Reinsurance Am. Corp.,*

248 F.3d 87, 91 (2d Cir. 2001).  Under this framework, initially set out in *McDonnell Douglas*

*Corp. v. Green,* 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), a plaintiff must

first establish a prima facie case of age discrimination.  *See id.*  Once the plaintiff has made out a

8

prima facie case, the employer is required to offer a legitimate, nondiscriminatory business

rationale for its actions. *See id.* If the employer articulates such a reason, the presumption of

age discrimination dissolves, and the burden shifts back to the plaintiff to prove that the

employer's stated reasons are merely pretextual and that age discrimination was the real reason,

or one of the real reasons, for the adverse employment action. *See id.*

*C. Plaintiff's Discrimination Claim*

     *1. Plaintiff Fails to Establish a Prima Facie Case*

     To establish a prima facie case of age discrimination, a plaintiff must show four things:

(1) she is a member of the protected class; (2) she is qualified for her position; (3) she has

suffered an adverse employment action; and (4) the circumstances surrounding that action give

rise to an inference of age discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Weinstock*,

224 F.3d at 42; *Schnabel,* 232 F.3d at 87. A plaintiff's burden of establishing a prima facie case

is de minimis. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203-04 (2d Cir. 1995); *Schnabel,* 232

F.3d at 87.

     Revere satisfies the first three elements of a prima facie case of discrimination. She was

62 years old when she was fired so she falls within the protected age group. *See* 29 U.S.C. §

631(a) (limiting prohibitions of ADEA to individuals at least 40 years old). She was qualified

for the position. *See Slattery,* 248 F.3d at 92 (2d Cir. 2001) ("[A]ll that is required is that the

plaintiff establish basic eligibility for the position at issue, and not the greater showing that [s]he

satisfies the employer... Plaintiff must show only that [s]he possesses the basic skills necessary

for performance of the job."); *see also Gregory v. Daly,* 243 F.3d 687, 696 (2d Cir. 2001) ("In a

discharge case in which the employer has already hired the employee into the job in question, the inference of minimal qualification is, of course, easier to draw than in a hiring or promotion case because, by hiring the employee, the employer itself has already expressed a belief that she is minimally qualified."). Finally, Revere has satisfied the third prong of a prima facie case because she suffered an adverse employment action when her employment with Bloomingdale's was terminated on December 10, 2002.

However, Revere does not provide sufficient evidence to warrant an inference, even at the prima facie stage, that she was the victim of age discrimination. In order to establish the final element of a prima facie case of age discrimination, plaintiff must offer evidence "adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *Marlow v. Office of Court Admin. of State of New York*, 820 F. Supp. 753, 756 (S.D.N.Y. 1993) (quoting *Intern. Bhd. of Teamsters v. United States*, 431 U.S. 324, 358, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977)). While courts have held that there is no single way to establish "circumstances giving rise to an inference of discrimination," it is clear that there must be sufficient evidence of a causal connection between plaintiff's termination and her age. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37-38 (2d Cir. 1994). A number of circumstances may contribute to a permissible inference of discriminatory intent including: "[t]he employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected

group; or the sequence of events leading to the plaintiff's discharge; or the timing of the

discharge." *Id.* at 37 (internal

citations omitted).

Revere does not present sufficient evidence to show the circumstances surrounding her

firing give rise to an inference of age discrimination. The only remarks or actions regarding age

to which she points are those allegedly made by Mr. Holman. In relying on such evidence to

prove Defendant's intent, Plaintiff erroneously equates long service with age. *See Hazen Paper*

*Co. v. Biggins*, 507 U.S. 604, 611, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993) ("Because age and

years of service are analytically distinct, an employer can take account of one while ignoring the

other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age

based.'"); *see also Criley v. Delta Air Lines, Inc.*, 119 F.3d 102, 105 (2d Cir. 1997)

("[E]mployment decisions driven by factors that are empirically intertwined with age are not

discriminatory so long as they are motivated by some feature other than the employee's age.").

Moreover, courts have routinely found such statements insufficient to create an inference of

discrimination. *See, e.g., Fortier v. Ameritech Mobile Communications*, *Inc.*, 161 F.3d 1106,

1113 (7th Cir. 1998) (statement such as "needing new blood" does not raise an inference of

discrimination); *Hill v. St Louis Univ.*, 123 F.3d 1114, 1119 (8th Cir. 1997) (statement of desire to

bring in "fresh blood" insufficient to give rise to an inference of discrimination based on age);

*Veleanu v. Beth Israel Medical Center,* No. 98-7455, 2000 WL 1400965, at *5 (S.D.N.Y. Sept.

25, 2000) (comment referring to "fresh blood" that was directed to length of tenure, which could

apply with equal force to employees under age forty, is age-neutral).

Furthermore, these alleged comments are stray remarks which lack a demonstrated nexus to Revere's discharge and are insufficient to defeat summary judgment. They were made long before and unrelated to Plaintiff's termination, and they may have been made before Plaintiff even began her employment at Roosevelt Field. *See Bern v. United Mercantile Agencies,* 942 F.Supp. 217, 219-20 (S.D.N.Y.1996) ("Many courts have held that stray remarks in the workplace, by themselves, and without a demonstrated nexus to the complained of personnel actions will not defeat the employer's summary judgment motions."). In addition, they were made by Mr. Holman, who was not involved in the decision to fire Plaintiff.[1] *See Burrell v. Bentsen,* No. 91-2654, 1993 WL 535076, at *8 (S.D.N.Y. Dec. 21, 1993) ("In particular, stray remarks in the workplace, statements by non-decisionmakers, and statements by decisionmakers unrelated to the decisional process are not by themselves sufficient to satisfy plaintiff's burden...") (internal citations omitted). There is no evidence that the people responsible for Plaintiff's discharge - Ranges, Spano and Butler - ever said anything that would indicate a discriminatory animus towards older employees, or that they were ever directed by anyone at Bloomingdale's to fire someone or treat someone differently because of his or her age.

Revere also claims that Defendant used the MDR process, which she characterizes as "entirely subjective," in an arbitrary and selective way in an effort to promulgate a discriminatory bias against older, longer-term employees.[2] Her only evidence of Mr. Holman's

---

[1] President Holman did not participate in any of the decisions made regarding Revere. (Butler Aff. at ¶ 11.)

[2] Plaintiff alleges that this practice was confirmed by Margaret Hofbeck, Defendant's former Senior Vice President for Human Resources. However, Hofbeck's affidavit states, "During my tenure with Defendant, I recognized that a few supervisory level employees endeavored to manipulate the MDR process to effectuate their own personal biases in connection with employee evaluations. Despite this fact, at no point during my tenure did I permit such action to take place." (Affidavit of Margaret Hofbeck ("Hofbeck Aff.") at ¶ 6.) Hofbeck's affidavit makes no mention of any company wide plan to selectively use the MDR to lower the performance rating of older

agenda is to point out that several employees did not receive their MDRs on an annual basis.

She points to two individuals, both direct reports of Mr. Ranges, whom she claims did not

receive their MDRs. She claims these individuals are at least 10 years younger than she is,

which would indicate that both employees who did not receive their MDRs were around the age

of fifty. These employees would therefore be members of Plaintiff's protected class and would

probably fall into the category of "older" employees. Plaintiff has not produced any evidence

that shows that the MDR scores of older employees were significantly lower than those of

younger employees, nor does she show that only older employees received their MDRs while

younger employees did not receive them. To the contrary, Plaintiff points to two older

employers who did not receive MDRs. Plaintiff, therefore, fails to show that older employees

were treated any differently than younger employees with respect to the MDR or any other

aspects of employment. Plaintiff's other evidence also fails to show discriminatory

intent. The fact that she was denied a ticket to the meeting does not show discriminatory

animus, because Kristin White, a relatively young employee, was also denied a ticket.

Furthermore, tickets were not even required to attend the meeting and both employees were able

to gain entrance to the meeting without a ticket. As for Plaintiff's exclusion argument, a

supervisor does not commit age discrimination merely because he does not speak to an employee

during meeting breaks.

### 2. Defendant Provided a Legitimate Explanation

Assuming, *arguendo*, that Plaintiff did present a prima facie case of age discrimination,

Bloomingdale's can rebut her prima facie case by "articul[ing] but...not prov[ing]" a legitimate,

---

employees and makes no mention of age whatsoever.

non-discriminatory reason for the adverse employment action. *Fisher v. Vassar College*, 70 F.3d

1420, 1433 (2d Cir. 1995). The employer's burden here is one of production of evidence rather

than one of persuasion. *Id.* Bloomingdale's has articulated a legitimate, non-discriminatory

reason for firing Plaintiff, citing poor job performance as the reason that Plaintiff was

terminated. Bloomingdale's has produced a detailed record of Plaintiff's performance

deficiencies leading up to Plaintiff's discharge and has, therefore, met its burden. Because

Bloomingdale's has satisfied its step-two burden of production, the burden of persuasion shifts

back to Plaintiff.


       *3. Plaintiff Has Failed to Show Pretext*

       Once the defendant articulates legitimate nondiscriminatory reasons for the adverse

employment action, a plaintiff must be afforded the opportunity to prove by a preponderance of

the evidence that the legitimate reasons offered by the defendant were not its true reasons, but

were a pretext for discrimination. Plaintiff attempts to establish pretext by explaining away her

errors and maintains that, despite the documented deficiencies in her job performance, the reason

she was given low MDR scores was because of Defendant's discriminatory agenda towards older

workers. However, Plaintiff may not establish pretext by rationalizing her errors or by blaming

others. *See Gambello* v. *Time Warner Communications, Inc.*, 186 F. Supp. 2d 209, 224

(E.D.N.Y. 2002) ("[Plaintiff]'s fundamental disagreement with the conclusions [her] supervisors

drew from incidents which [she] admits occurred, and [her] subjective belief that they should not

have reflected badly on [her] performance...is not evidence that [her] supervisor's appraisals

14

were a sham, invented to mask discrimination."). Moreover, Plaintiff fails to present any

evidence that supports the existence of a discriminatory agenda towards older workers.[3]

Plaintiff also ignores the fact that Holman, the supposed source of this animus, had no

involvement in the decision to discipline or discharge Plaintiff and that Revere's job

performance was exclusively judged by Ranges. Besides the fact that Ranges "ignored" her at a

meeting, Plaintiff has not put forth any evidence that Ranges showed any discriminatory animus

towards her because of her age. A particularly important factor here is that Ranges, the

supervisor mainly responsible for Plaintiff's termination, was also the supervisor who hired her.

The Second Circuit has held that this "factor[ ] strongly suggest[s] that invidious discrimination

was unlikely. For example, where the person who made the decision to fire was the same person

who made the decision to hire, it is difficult to impute to [him] an invidious motivation that

would be inconsistent with the decision to hire." *Schnabel*, 232 F.3d at 91 (quoting *Grady v.

Affiliated Cent., Inc.* 130 F.3d 553, 560 (2d Cir. 1997)). *See also Brollosy v. Margolin, Winer

and Evens, LLP*, No. 04-0873, 2006 WL 721433, at *8 (E.D.N.Y. March 20, 2006) ("The

rationale behind this inference is that it hardly makes sense to hire workers from a group one

dislikes (thereby incurring the psychological costs of associating with them) only to fire them

once they are on the job.") (quoting *Spiegler v. Israel Discount Bank of New York*, No. 01-6364,

---

[3] Defendant's employment statistics further contradict Plaintiff's claim that there was a company-wide discriminatory agenda. Plaintiff was the only bonus eligible employee over age 60 who was terminated for cause during the 2002 calendar year. (Kirkman Aff. at ¶ 9.) The lowest termination rates among bonus eligible employees were among those age 70 and older (0%) and those between the ages of 50 and 59 (2%). The combined rate of termination for cause in this category was 2.5% for employees over 50 compared to 3.1% for comparable employees under age 40, hardly demonstrative of a conspiracy against older workers.

In addition, Defendant was expanding the size of its workforce in the protected class. For the years 2001 and 2002, Defendant hired more executives in the protected class than it fired. In this combined two year period, six employees age 50 or older were terminated for cause, including Plaintiff, who was the only employee age 60 or older who was discharged for cause. During that same period, 18 new employees in the same age group were hired. Three times as many executive employees age 50 and over were hired during this two year period than were terminated for cause, hardly evidence of an effort to get rid of older workers. (Kirkman Aff. at ¶¶ 9, 11.)

2003 WL 21488040, at *10 (S.D.N.Y. June 25, 2003)) (internal citations omitted).   This factor

remains a highly relevant factor in adjudicating a motion for summary judgment on an ADEA

claim.  *Schnabel,* 232 F.3d at 91.  Finally, as in *Schnabel*, 232 F.3d at 91, the decision to fire

Revere was not made in a vacuum; rather, Revere was replaced by Elisa Leary, the person whom

Revere originally replaced.  Defendants clearly had the opportunity to compare the two women

and found that Leary was better in the position than Revere.

Revere has failed to identify sufficient evidence in the record to permit a reasonable trier

of fact to conclude that unlawful discrimination was a motivating factor for her discharge.

Accordingly, Plaintiff's discrimination claim must be dismissed.


*D.  Plaintiff's Retaliation Claim*

Retaliation claims under the ADEA are evaluated under the same *McDonnell Douglas*

burden-shifting framework used for analyzing discrimination claims.  *See Terry v. Ashcroft,* 336

F.3d 128, 141 (2d Cir. 2003).  "To establish a prima facie case of retaliation, an employee must

show '[1] participation in a protected activity known to the defendant; [2] an employment action

disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the

adverse employment action.' " *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.

1998) (quoting *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir. 1995)).  As with direct

discrimination claims, once the plaintiff establishes a prima facie case of retaliation, the burden

shifts to the defendant to articulate a legitimate non-discriminatory reason for the allegedly

retaliatory employment decision.  *See Quinn*, 159 F.3d at 769.  If the defendant does so, the

burden returns to the plaintiff, who must show that the articulated non-discriminatory reason for defendant's action is in fact a pretext for retaliation. *Id*.

Revere has not established a prima facie case of retaliation. Plaintiff filed an EEOC complaint in November 2002; this was clearly participation in a protected activity. *See Cruz v. Coach Stores, Inc.* 202 F.3d 560, 566 (2d Cir. 2000) (A protected activity is any "action taken to protest or oppose statutorily prohibited discrimination."). However, the protected activity must be *known* to the Defendant. Plaintiff has not shown that Bloomingdale's was aware that Plaintiff filed a complaint with the EEOC when they fired her on December 10, 2002. Based on the evidence in the record, Bloomingdale's first became aware that Plaintiff filed her complaint on December 20, 2002, 10 days after Plaintiff was terminated, when Ranges received official notice from the EEOC that a charge had been filed.

Plaintiff correctly argues that it is enough for the employer to have only "general corporate knowledge" of the protected activity. *See Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000). The record, however, lacks any evidence that any employee of Defendant had knowledge of Plaintiff's EEOC charge prior to December 20, 2002. Plaintiff makes no allegations that she told anybody at Bloomingdale's that she filed a complaint with the EEOC or provides any proof that any employee at Bloomingdale's was aware of her complaint before December 20, 2002. She also makes no allegations that she complained of age discrimination to anyone at Defendant at any time during the course of her employment.

Defendant must have "knowledge" of the protected activity to be able to "engage in retaliation." *Gordon v. Kings County Hosp. Ctr*., No. 95-3006, 2000 WL 1868091, at *6 (E.D.N.Y. Oct. 25, 2000); *see also Jalal v. Columbia Univ*., 4 F. Supp. 2d 224, 242 (S.D.N.Y.

1998) (holding that, if defendant was unaware of plaintiff's activity, defendant's actions "could

not have been motivated by the fact that" plaintiff engaged in the activity). This knowledge

cannot be shown by "inferences alone." *Gordon*, 2000 WL 1868091, at *6. If Bloomingdale's

had no knowledge a complaint had been made, its motive for firing Plaintiff can hardly be

retaliation towards Plaintiff for making that complaint.[4]

    Plaintiff argues that the Court should infer causation based on temporal proximity. While

it is true that a causal connection necessary to sustain a retaliation claim can be established

indirectly by showing that the protected activity was closely followed by an adverse employment

action, the Court need not decide the temporal proximity question because Revere's claim must

fail for lack of evidence that would suggest that Ranges, or anyone else at Bloomingdale's, was

aware of her complaint and that there was thus a sufficient causal connection for a reasonable

jury to find in her favor.[5] Without such awareness, it is difficult to find any causal connection

between the protected activity and the adverse action. Therefore, Revere has failed to defeat the

Defendant's motion for summary judgment.


*E. Plaintiff's State Law Claims*

---

[4] Revere also argues that the denials of her requests for transfers to other positions should be considered adverse employment actions against her, and should be considered as part of her prima facie case. This argument must fail for the same reasons. Plaintiff's request to transfer to Huntington was denied in mid-2002 (Butler Aff. at ¶ 7) and Plaintiff's request to transfer to the H.R. Representative position in New York was denied by Spano by memo dated December 3, 2002. (*See* Ex. 23.) These transfer requests were both denied before December 20, 2002, the date that anyone at Bloomingdale's was aware that Plaintiff had filed a complaint with the EEOC.


[5] It should also be noted that Revere was already on final warning in October 2002, well before she turned to the EEOC. Before Revere was placed on final warning, much attention was given to her performance deficiencies that began eleven months before she filed the charge. This severely undercuts Plaintiff's argument regarding temporal proximity. *See Slattery*, 248 F.3d at 95 ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

The decision whether to exercise supplemental jurisdiction is left to the discretion of the district court. *Ametex Fabrics, Inc. v. Just In Materials, Inc*., 140 F.3d 101, 105 (2d Cir. 1998). Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a state law claim where, as here, it dismisses all of the federal claims over which it has original jurisdiction. Because none of Revere's disputes with Defendant are cognizable under federal law, this Court will decline to exercise supplemental jurisdiction over Revere's state law claims.

CONCLUSION

For the reasons set forth above, the Defendant's motion for summary judgment is GRANTED in its entirety, and Revere's action is DISMISSED. The Clerk of Court is directed to close this case.

**SO ORDERED**.

                                        /s/
                        SANDRA L. TOWNES
                        United States District Judge

Dated: Brooklyn, New York
       November 13, 2006

19